1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PATRICK PINEGAR,

11            Plaintiff,                          No. 2:09-cv-01767 KJN (TEMP)

12        v.

13   COMMISSIONER OF THE SOCIAL
     SECURITY ADMINISTRATION,
14
              Defendant.                          ORDER
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

18   ("SSI") benefits under Title XVI[1] of the Social Security Act ("Act").[2]  (Dkt. No. 21.)  The

19   Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

20   judgment.  (Dkt. No. 26.)  For the reasons that follow, the court will deny plaintiff's motion for

21   summary judgment, grant the Commissioner's cross-motion for summary judgment, and direct

22   _____

23        [1] Initially, plaintiff also made an application for Disability Insurance Benefits under Title
     II.  That application was withdrawn at the hearing and plaintiff amended his alleged onset date of
24   disability to January 22, 2007.  Administrative Transcript ("AT") 16.

25        [2] This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
26   proceed before a United States Magistrate Judge.  (Dkt. Nos. 9, 16.)

                                               1

the Clerk of Court to enter judgment in favor of the Commissioner.

I.      BACKGROUND[3]

Plaintiff was 51 years old on the amended alleged disability onset date, and was 53 years old at the time that the ALJ's entered his decision denying plaintiff's application. (See Administrative Transcript ("AT") 23, 33.)  Plaintiff attended high school through the twelfth grade and obtained a GED.  (AT 43.)  Plaintiff previously worked as a parts puller/ supervisor. (AT 23.)  Plaintiff alleges he is disabled due to bi-polar disorder, possible adult attention deficit disorder (not yet diagnosed), and a heart murmur.  (AT 82, 87, 99, 105.)

A.      Procedural Background

In a decision dated January 22, 2009, the ALJ denied plaintiff's application. (See AT 16-25.)  As discussed below, the ALJ determined that plaintiff was able to perform jobs that existed in significant numbers in the national economy and that plaintiff has not been under a disability from January 22, 2007, through the date of the ALJ's decision.  (AT 24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 1-3.)

Plaintiff subsequently filed this action.  Plaintiff contends the ALJ improperly evaluated whether a Listing was met, improperly disregarded record medical opinions, improperly discredited plaintiff and a laywitness, and relied on an incomplete hypothetical posed to the vocational expert in finding plaintiff is not disabled.

B.      Summary of the ALJ's Findings

The ALJ conducted the required five-step, sequential evaluation and concluded

////

////

---

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

that plaintiff was not disabled within the meaning of the Act.[4]  At step one, the ALJ concluded

that plaintiff had not engaged in substantial gainful activity since January 22, 2007, the alleged

date of onset.  (AT 18.)  At step two, the ALJ concluded that plaintiff had the "severe"

impairments of "cognitive disorder NOS, bipolar disorder, substance abuse, in recent remission,

diabetes mellitus, mild heart disease, and mild degenerative disc disease of the lumbar spine."

(AT 18.)  At step three, the ALJ found that plaintiff's did not have an impairment or combination

of impairments that met or medically equaled any impairment listed in the applicable regulations.

The ALJ specifically addressed whether plaintiff meets or medically equals Listing 12.04  (AT

18-19.)

　　　　　The ALJ next assessed plaintiff's residual functional capacity ("RFC").  The ALJ

found that:

---

[4]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

　　　　　Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
　　　　　Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
　　　　　Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
　　　　　Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
　　　　　Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except work that is unskilled.

(AT 20.)[5]  In making such a finding, the ALJ found plaintiff only partially credible.  (AT 23.)

At step four, the ALJ found that plaintiff's RFC precluded plaintiff from performing his past relevant work as a parts puller/supervisor.  (AT 23.)  At step five, relying on the testimony of a vocational expert, the ALJ found plaintiff could perform work as a janitor, laundry laborer, and machine washer, and that these jobs exist in significant numbers in the national economy.  (AT 24.)  Accordingly, the ALJ found plaintiff had not been under a disability from January 22, 2007, through the date of the ALJ's decision.  (AT 24.)

II.     STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error; and (2) supported by substantial evidence in the record as a whole.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with

---

[5]  With respect to term "medium work," 20 C.F.R. § 1567(c) provides:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

1   respect to resolving ambiguities in the medical evidence.").  Findings of fact that are supported

2   by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221

3   F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

4   denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222

5   (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of

6   Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than

7   one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart,

8   400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a

9   whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

10  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

11  2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

12  III.   ANALYSIS

13       A.  Listing 12.04

14           Plaintiff contends that he met the requirements of Listing 12.04 and should

15  therefore be considered presumptively disabled.  The Social Security Regulations "Listing of

16  Impairments" is comprised of impairments to certain categories of body systems that are severe

17  enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180,

18  183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are

19  considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In

20  meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler,

21  754 F.2d 1545, 1550 (9th Cir. 1985).

22           To meet a listed impairment, a claimant must establish that he meets each

23  characteristic of a listed impairment relevant to his claim.   To equal a listed impairment, a

24  claimant must establish that he has symptoms, signs and laboratory findings "at least equal in

25  severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's

26  impairment is not listed, then to the listed impairment "most like" the claimant's impairment.  20

5

1   C.F.R. § 404.1526.  A finding of equivalence must be based on medical evidence only.  20

2   C.F.R. § 404.1529(d)(3).

3          Mental disorders are considered in Part 12 of the Listings.  Listing 12.04

4   addresses affective disorders.  The Listing is comprised of two parts, labeled  "A" and "B".  Both

5   parts of the listing must be met or equaled.[6]   The Part A criteria determine whether evidence of a

6   depressive disorder is present.  20 C.F.R. Part 404, Subpt.  P, App. 12.04(A).  The Part B criteria

7   evaluate the functional loss resulting from a depressive disorder.  See, e.g., Cruse v. U.S. Dept. of

8   Health & Human Services, 49 F.3d 614, 616 (10th Cir. 1995).  The ALJ found plaintiff did not

9   meet or equal the "B"criteria.  (AT 19.)  Part B of Listing 12.04 requires at least two of the

10  following functional limitations:

11          1.  marked restriction of activities of daily living;

12          2.  marked difficulties in maintaining social functioning;

13          3.  marked difficulties in maintaining concentration, persistence or

14          pace; or

15          4. repeated episodes of decompensation, each of extended duration.

16  "Marked" means "more than moderate, but less than extreme."  See Listing 12.00(C).

17          The ALJ found plaintiff did not meet the "B" criteria.  (AT 19.)  Specifically, the

18  ALJ assessed mild restriction in activities of daily living, mild difficulties in social functioning,

19  moderate difficulties in concentration, persistence and pace and no episodes of decompensation.

20  (Id.)  In support of the mild restrictions conclusion, the ALJ noted plaintiff was able to care for

21  his needs and obtain food, had a good relationship with his girlfriend, was able to take public

22  transportation, lived in a half-way house and got along fine with staff and other residents.  (AT

23  19.)  Plaintiff contests these findings on the grounds that these assessments were not consistent

24  with the medical records and the testimony of plaintiff and his girlfriend.  As explained below,

25

26          [6]  Alternatively, the requirements of part C may be satisfied.  The ALJ also found plaintiff did not satisfy the Part C criteria.  (AT 19.)  That finding is not challenged here.

1    plaintiff's testimony was properly discredited.  The record medical evidence, viewed as a whole,

2    supports the ALJ's finding that plaintiff did not meet Listing 12.04.  While there is some

3    evidence that plaintiff had occasional problems dealing with other people, the ALJ fairly

4    characterized the evidence and concluded plaintiff had only mild restrictions in activities of daily

5    living and social functioning.  (AT 362 (problems with housemate); 365 (mad at bus driver); cf.

6    AT  277 (gets along well with girlfriend), 295 (rides bike or takes bus for transportation), 362-66

7    (appropriate grooming), 478-80 (same), 483-89 (same).)  In assessing moderate difficulties in

8    concentration, persistence and pace, the ALJ specifically relied on the objective findings and

9    assessment of examining psychologist Dr. Stears and these findings are supported as well by the

10   assessments of Dr. Gallucci, the state agency reviewing physician.  (AT 19, 297, 317.)

11   Therefore, substantial evidence supports the finding that plaintiff did not have marked limitations

12   in two of the functional areas described in Listing 12.04.

13        B.  Medical Opinions

14              Plaintiff contends the ALJ improperly disregarded the opinion of his treating

15   mental health providers.  The medical opinions of three types of medical sources are recognized

16   in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who

17   examine but do not treat the claimant (examining physicians); and (3) those who neither examine

18   nor treat the claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating

19   physician's opinion should be accorded more weight than opinions of doctors who did not treat

20   the claimant, and an examining physician's opinion is entitled to greater weight than a non-

21   examining physician's opinion.  Id.  Where a treating or examining physician's opinion is

22   uncontradicted by another doctor, the Commissioner must provide "clear and convincing"

23   reasons for rejecting the treating physician's ultimate conclusions.  Id.  If the treating or

24   examining doctor's medical opinion is contradicted by another doctor, the Commissioner must

25   provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons

26   must be supported by substantial evidence in the record.  Id. at 830-31; accord Valentine, 574

7

1   F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of

2   the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making

3   findings.'"  Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751

4   (9th Cir. 1989)).  "The ALJ is responsible for determining credibility and resolving conflicts in

5   medical testimony."  Magallanes, 881 F.2d at 750; see also Burkhart v. Bowen, 856 F.2d 1335,

6   1339-40 (9th Cir. 1988) (affirming where the ALJ carefully detailed arguably conflicting clinical

7   evidence and provided reasons for crediting one treating physician's opinion over another

8   treating physician's opinion).

9          Plaintiff cites to no functional limitations assessed by treating mental health

10   providers that were disregarded by the ALJ, and he cannot do so because the record does not

11   contain such.  Plaintiff instead relies on GAF scores of 49 assessed by his mental health

12   providers.[7]  (AT 277, 492, 503.)  Plaintiff's argument is unpersuasive because "[a]n ALJ does not

13   commit legal error by failing to incorporate a GAF score into his disability assessment."

14   Speelman v. Astrue, No. EDCV 09-1222 CW, 2010 WL 3001664, at *4 (C.D. Cal. July 29,

15   2010) (unpublished) (concluding that ALJ's failure to discuss a GAF score assigned by a treating

16   physician was not legal error); see also McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir.

17   2008) (holding that the "ALJ's failure to address the three GAF scores specifically does not

18   constitute legal error" where the RFC assessment took into account the claimant's mental

19   impairments, was not inconsistent with the claimant's three limited duration GAF scores, and

20   was supported by substantial evidence in the record)[8]; Howard v. Comm'r of Soc. Sec., 276 F.3d

21

22       [7] GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
23   Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 41-50 rating indicates serious symptoms such
as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school
24   functioning.

25       [8] The Speelman and McFarland decisions relied, in part, on the following conclusion
made by the Social Security Administration: "To assess current treatment needs and provide a
26   prognosis, medical sources routinely observe and make judgments about an individual's

235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The only identified potential functional limitation assessed by plaintiff's treating physician was that of Dr. Rajappa, who noted plaintiff reported poor memory and concentration.  AT 277.  The court notes this is a self-reported limitation by plaintiff, not a functional assessment by the treating physician.  Moreover, even if considered a functional assessment, the residual functional capacity assessed by the ALJ is consistent with this finding in that the ALJ found plaintiff had moderate difficulties in concentration, persistence or pace, and limited plaintiff to unskilled work. (AT 19, 20.)  See Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (residual functional capacity limited to unskilled work consistent with moderate limitations in four categories of mental functioning.)  Accordingly, there was no error in the ALJ's treatment of the record medical evidence.

C.  Credibility of Plaintiff

Plaintiff also contends that the ALJ improperly found his testimony regarding his subjective complaints (AT 51-55) only partially credible.  In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom

functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000).

1       testimony . . . simply because there is no showing that the impairment can
reasonably produce the degree of symptom alleged.

2

3          Second, if the claimant meets this first test, and there is no
evidence of malingering, the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear and

4   convincing reasons for doing so. . . .

5   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

6   omitted).

7         In evaluating whether subjective complaints are credible, the ALJ should first

8   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

9   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

10   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

11   medication, treatment and functional restrictions.  See Bunnell v. Sullivan, 947 F.2d 341, 345-47

12   (9th Cir. 1991) (en banc).  The ALJ also may consider: (1) the applicant's reputation for

13   truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or

14   inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

15   and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996);

16   see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work

17   records, physician and third party testimony about nature, severity and effect of symptoms, and

18   inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

19   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

20   debilitating medical problem may be a valid consideration by the ALJ in determining whether the

21   alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of

22   HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

23   observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

24   substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

25   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

26   reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

1  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

2          In finding plaintiff was partially credible, the ALJ noted the objective findings of

3  mental impairment were relatively benign and that Dr. Stearns found, contrary to plaintiff's

4  allegations of disabling mental problems, that plaintiff could perform simple repetitive tasks.

5  (AT 21, 295-97.)  The ALJ also thoroughly and fairly characterized the treatment records and

6  reasonably interpreted those records as showing plaintiff to be able to attend his appointments,

7  remembering to take his medications, and demonstrating improvement with medication.  (AT 21-

8  23, 362-67, 478-89, 494-95.)  To the extent the ALJ discredited plaintiff's allegations that he

9  could not engage in gainful activity, the ALJ properly discounted this testimony on the basis that

10  controlling weight was given to the opinions of the examining and state agency physicians that

11  plaintiff was capable of performing at least simple work.  (AT 23, 297, 303-04, 321-23, 452-56.)

12  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (opinions of examining and

13  state agency physicians may properly support credibility determination).  The factors considered

14  by the ALJ were all valid and supported by the record.  Therefore, the ALJ's credibility

15  determination was based on permissible grounds and will not be disturbed.

16          D.  Laywitness Evidence

17          Plaintiff further contends that the ALJ improperly disregarded the statements of

18  plaintiff's girlfriend regarding plaintiff's limitations.  "[L]ay witness testimony as to a claimant's

19  symptoms or how an impairment affects ability to work is competent evidence, and therefore

20  cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

21  1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family

22  members in a position to observe a plaintiff's symptoms and daily activities are competent to

23  testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must

24  give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; see also Stout v.

25  Commissioner SSA, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss

26  competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless

11

1   it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have

2   reached different disability determination).

3            Plaintiff's girlfriend provided a third party adult function report.  (AT 167-74.)  In

4   the report, plaintiff's girlfriend indicated that plaintiff spent his time looking for shelter, lunches

5   at Loaves and Fishes, and going to meetings.  Also reported was an inability to concentrate on

6   daily tasks and work, that plaintiff seldom shaved, that plaintiff had a hard time concentrating,

7   often getting confused and lost, that plaintiff rode his bike, took walks and rode the bus, that

8   plaintiff saw shadows, had mood swings often, that plaintiff could handle stress as long as

9   someone did not set him off, and that medications had helped.  (Id.)  The ALJ did not expressly

10  address this third party report.  (AT 19, 23).  The court concludes, however, that such omission is

11  harmless because even if the girlfriend's report is fully credited, no reasonable ALJ would have

12  reached a different disability determination.  See Stout v. Commissioner SSA, 454 F.3d at 1056.

13  The girlfriend's statements are consistent with the testimony of plaintiff, but as discussed above,

14  plaintiff's testimony, to the extent it was inconsistent with an ability to perform any work, was

15  properly discredited.  See Valentine v. Astrue, 574 F.3d 685,694 (9th Cir. 2009) (where clear and

16  convincing reasons given for rejecting subjective complaints of plaintiff and third party

17  testimony mirrors plaintiff's, germane reasons given for rejecting third party evidence).

18  Moreover, the girlfriends's statements are consistent with the residual functional capacity

19  assessed by the ALJ, which limited plaintiff to performing unskilled work.  (AT 20.)

20  Accordingly, there was no error in the ALJ's implicit conclusion that this laywitness testimony

21  does not support plaintiff's allegations of disability.

22       E.  Vocational Expert Testimony

23            Finally, plaintiff contends that the ALJ failed to include all of plaintiff's

24  limitations in the hypotheticals relied on by the ALJ in finding there were a significant number of

25  jobs which plaintiff can perform.  Hypothetical questions posed to a vocational expert must set

26  out all the substantial, supported limitations and restrictions of the particular claimant.

1   Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all

2   the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant

3   can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

4   While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

5   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

6   determination must be supported by substantial evidence in the record as a whole.  Embrey v.

7   Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

8           A hypothetical was posed to the vocational expert by the ALJ which included

9   limitations to medium residual functional capacity, with good comprehension and memory for

10  simple instructions, good concentration and persistence for simple tasks, good social functioning

11  and adequate adaptive functioning, which limitations were based on the residual functional

12  capacity assessments of the state agency physicians.  (AT 60, 323, 452.)  In response to this

13  hypothetical, the vocational expert testified that, among other jobs available to a person with

14  these limitations, was the position of janitor, with 114,000 positions in California and over a

15  million positions nationally.  (AT 61.)  Upon further questioning by plaintiff's counsel, posing a

16  hypothetical in which the limitations included having to take unscheduled restroom breaks,

17  moderate to marked deficits in the ability to understand, remember, and carry out detailed or

18  complex job instructions, moderate impairments in the ability to maintain attention,

19  concentrations, and persistence or pace, moderate impairment in the ability to withstand the

20  stress and pressures associated with day-to-day work, moderate impairment in the ability to

21  respond appropriately to usual work situations, and mild impairment in the ability to relate and

22  interact with coworkers, supervisors and the public, the vocational expert testified that there

23  would be a seventy-five percent erosion in the janitorial base.  (AT 64-66.)  These limitations

24  were predicated on the limitations assessed by Dr. Stearns, the examining psychologist.  (AT

25  ////

26  ////

297.)  Because the vocational expert identified 28,500 jobs in California[9] and over 250,000 jobs available nationally to plaintiff, substantial evidence supports the ALJ's finding that plaintiff is not disabled.  See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and 64,000 nationwide are sufficient); Barker v. Secretary HHS, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,200 jobs in Southern California are sufficient).  The additional limitation posed by plaintiff's counsel of plaintiff being unable to attend work three days out of the month is unsupported by the record and the ALJ committed no error in disregarding the vocational expert's testimony with respect to this hypothetical.  (AT 67, 297, 322.)

IV.     CONCLUSION

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  For the reasons stated above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Dkt. No. 21) is denied.

2.  The Commissioner's cross-motion for summary judgment (Dkt. No. 26) is granted.

3.  The Clerk of Court enter judgment in favor of the Commissioner.

IT IS SO ORDERED.

DATED:  February 10, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[9]  Seventy-five percent erosion means twenty-five percent of the jobs are still available, e.g. 114,000 janitorial jobs in California times 0.25 equals 28,500 jobs.